UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:07-CR-88 |
| V. | ) | (Varlan / Guyton) |
| | ) | |
| ROY LYNN OAKLEY, | ) | |
| | ) | |
| Defendant. | ) | |

## FIRST SUPPLEMENTAL PROTECTIVE ORDER

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the district court as may be appropriate.

### 1. BACKGROUND

On July 18, 2007, a two-count indictment was filed charging Roy Lynn Oakley with communication of restricted data and theft of public property. [Doc. 3]. Mr. Oakley retained counsel to defend the allegations. Attorneys Herbert S. Moncier and David S. Wigler appeared with Mr. Oakley at his initial appearance and arraignment conducted July 19, 2007, and the Court noted their representation. [Doc. 6]. At the arraignment, Assistant United States Attorney David Dake advised Attorney Moncier and the Court that this case involves classified material within the meaning of the Classified Information Procedures Act (CIPA), 18 U.S.C. App. §§ 1 - 9. AUSA Dake specified that some material to be disclosed to the defense is classified and cannot be disclosed until the CIPA requirements were met, to include security clearance for defense counsel and the entry of a Protective Order. The Court asked that Attorney Moncier consider the issue of defense counsel

security clearance and inform the Court of his position regarding security clearance.

On August 13, 2007, the Court conducted a hearing on the United States' Request for Pretrial Conference Under Section 2 of the Classified Information Procedures Act [Doc. 14]. At that hearing, counsel for Mr. Oakley agreed that the government has properly invoked CIPA and agreed that the Section 2 hearing is appropriate. At that hearing, Attorney Moncier advised that he does not intend to seek a security clearance as proposed by the government. Because CIPA requires this Court to enter a Protective Order setting forth the security procedures to govern this case, the Court asked that the parties consult on the terms of such an order and file with the Court any agreements. In response, the government and the defense submitted to the Court an Agreed Protective Order, which was entered by this Court on August 22, 2007. [Doc. 20]. The Agreed Protective Order included those aspects of security procedure on which the parties could agree. On August 24, 2007, the government filed a Motion for Supplemental Order [Doc. 21]. Mr. Oakley responded in opposition on October 4, 2007, at [Doc. 34].

The Court conducted a hearing on the merits of the respective positions of the government and the defense on October 17, 2007. Assistant United States Attorneys David Dake and Anthony Garcia were present on behalf of the government. Defendant Roy Oakley was present with his attorney, Herbert S. Moncier. The Court received argument of counsel and took the issues raised under advisement. [Doc. 37].

## 2. ISSUE OF DEFENSE COUNSEL SECURITY CLEARANCE

The Court has previously found, and the parties agree, that this case is subject to the provisions of CIPA. In passing the CIPA legislation in 1980, Congress established a "comprehensive procedural framework for the discovery and admission of classified [information]

in a criminal prosecution." United States v. Rewald, 889 F. 2d 836, 847 (9th Cir. 1989). CIPA required the Chief Justice of the United States, in consultation with the Attorney General, the Director of National Intelligence and the Secretary of Defense, to "prescribe rules establishing procedures for the protection against unauthorized disclosure of any classified information in the custody of the United States district courts, courts of appeal, or Supreme Court." 18 U.S.C. App. 9(a). Chief Justice Warren E. Burger complied with this directive and set forth 15 procedures, designated by paragraphs, designed to effectuate the purposes of CIPA. Paragraph 5 of the Security Procedures Established by the Chief Justice for the Protection of Classified Information provides as follows:

> 5. *Persons Acting for the Defendant.* The government may obtain information by any lawful means concerning the trustworthiness of persons associated with the defense and may bring such information to the attention of the Court for the Court's consideration in framing a protective order pursuant to Section 3 of the Act.

The Security Procedure which requires "security clearance" by the appointed Court Security Officer is Paragraph 4, which pertains to court personnel and persons acting for the court. Paragraph 4 does not apply to defense counsel or persons acting on behalf of the defendant. Therefore, this Court will not require Attorney Moncier, Attorney Wigler or others working on behalf of Mr. Oakley to seek an Executive Branch security clearance from the Court Security Officer at this time. Compare, United States v. Bin Laden, 58 F. Supp. 2d 113 (S.D.N.Y. 1999) (finding the court had authority to compel defense counsel to undergo Court Security Officer security clearance procedure); and United States v. Musa, 833 F. Supp. 752 (E.D.Mo. 1993) (defense counsel required to obtain formal security clearance), with United States v. Smith, 706 F. Supp. 593, n.1 (M.D.Tn. 1989) (reversed on other grounds) (finding no authority for the court to require defense counsel to

3

submit to a security clearance) and United States v. Jolliff, 548 F. Supp. 232, 233 (D.Md. 1981) (holding that Paragraph 5 does not provide the court with authority to make submission to a security clearance a prerequisite to representation of a defendant in a case involving classified information.)[1]

The Court is left with the issue of access to classified information of persons acting for the defendant and the directive of Justice Burger's Security Procedure 5. The Court is required to consider any information brought to the attention of the Court by the government in framing the protective order. The government may obtain this information "by any lawful means." The reason for this, like the reason for CIPA itself, is the protection of classified information. However, defense counsel in this case have repeatedly stated that they do not seek access to classified information and intend to proceed with Mr. Oakley's defense without using classified information. Further, defense counsel agree to be subject to the same restrictions that may be placed on members of the jury with respect to any classified information disclosed during trial by the government. The Court appreciates this well-considered proposal by the defense, but finds that it does not adequately protect the government's interest in protecting classified information.[2] Moreover, the Court must find that it does not adequately protect Roy Oakley's right to a trial that is fundamentally fair within the

---

[1] This option, nonetheless, will remain available should members of the defense wish to avail themselves of it.

[2] For example, at the recent hearing conducted on the proposed Supplemental Protective Order [Doc. 21], the United States interrupted argument of defense counsel to request an *in camera* hearing. Once counsel were reassembled in the Court's chambers, the attorneys for the government stated that Attorney Moncier had, albeit inadvertently, revealed classified information during his argument. The government's attorneys were not even able to identify what part of Attorney Moncier's comments constituted classified information because court personnel and Attorney Moncier had not yet obtained the requisite security clearance or determination. While the content and the source of the information allegedly contained within Attorney Moncier's remark is unknown, it is indicative of the need for this Court to take action to prevent dissemination of classified information.

4

meaning of the Fifth Amendment.

For example, this Court has ordered the disclosure of categories of information that may be helpful to Mr. Oakley's defense; the Order on Discovery and Scheduling [Doc. 7 ¶ E] states:

> The government shall reveal to the defendant and permit inspection and copying of all information and material known to the government which may be favorable to the defendant on the issues of guilt or punishment within the scope of Brady v. Maryland, 373 U.S. 83 (1963), United States v. Agurs, 427 U.S. 97 (1976) (exculpatory evidence), and United States v. Bagley, 473 U.S. 667 (1985) (impeachment evidence). Timing of such disclosure is governed by United States v. Presser, 844 F.2d 1275 (6th Cir. 1988).

The Presser court voiced grave concern for restricted access to potentially exculpatory material, observing that "it is fundamentally unfair for the government to achieve a conviction through the concealment of evidence which undermines the strength of the government's case against the defendant." Presser, 844 F.2d at 1282-83. While this does not directly address the situation where, for other philosophical reasons, defense counsel declines access to these materials, the impact on the defendant facing conviction is the same.[3] See United States v. Phillip, 948 F.2d 241, 249 (6th Cir. 1991) (potentially exculpatory evidence undisclosed by government can be 'sufficient to undermine confidence in the outcome' of the trial); Strickler v. Greene, 527 U.S. 263, 289-290 (1999) (disclosure of exculpatory material produces "a trial resulting in a verdict worthy of confidence.")

---

[3] As observed in another context, "the right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." Faretta v. California, 422 U.S. 806, 819-820 (1975).

The right to counsel is only one of the several rights secured to Mr. Oakley by the Sixth Amendment. As described by Justice Stewart:

> The Sixth Amendment includes a compact statement of the rights necessary to a full defense:
>
> 'In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.'
>
> Because these rights are basic to our adversary system of criminal justice, they are part of the 'due process of law' that is guaranteed by the Fourteenth Amendment to defendants in the criminal courts of the States. The rights to notice, confrontation, and compulsory process, when taken together, guarantee that a criminal charge may be answered in a manner now considered fundamental to the fair administration of American justice-through the calling and interrogation of favorable witnesses, the cross-examination of adverse witnesses, and the orderly introduction of evidence. In short, the Amendment constitutionalizes the right in an adversary criminal trial to make a defense as we know it.

Faretta v. California, 422 U.S. 806, 818 (1975) (citing California v. Green, 399 U.S. 149, 176 (Harlan, J., concurring); Gideon v. Wainwright, 372 U.S. 335 (1963) and Argersinger v. Hamlin, 407 U.S. 25 (1972) (right to counsel); Pointer v. Texas, 380 U.S. 400 (1965) (right of confrontation); Washington v. Texas, 388 U.S. 14 (1967) (right to compulsory process); and In re Oliver, 333 U.S. 257, 273 (1948) (right to presence of defendant's personal supporters during trial).

The Court finds, under these circumstances, that Mr. Oakley is forced to elect whether to proceed with the counsel of his choice or to fully avail himself of his other Sixth Amendment guarantees, should their exercise touch upon information or documents that are classified. Mr. Oakley's retained defense team is left with the choice of a personally invasive inquiry to obtain

security clearance, or proceeding to trial under the potential handicap of not receiving all of the government's court-ordered disclosures. This Court is not convinced that Mr. Oakley can receive a fair trial or be assured of effective assistance of counsel without access to the classified information to meet the government's case. Unfortunately, this Court is proceeding under the same handicap as defense counsel until the CIPA security procedures are in place as no member of chambers, to include the undersigned, has yet received the requisite security clearance, although the process for obtaining the same has commenced. The Court is taking the government at its word that it is imperative that certain classified information must be disclosed and discussed with persons acting on Mr. Oakley's behalf. Should the progress of the case demonstrate otherwise, the abundance of precaution exercised in this Order may be revisited.

### 3. APPOINTMENT OF CLEARED COUNSEL

The Court is left with the undesirable prospect of conducting adversarial proceedings inquiring into the trustworthiness of defense counsel with respect to the disclosure of classified information *to which he does not seek access*. Such a proceeding would not only pose an undue burden on counsel for Mr. Oakley, counsel for the United States and the Court, it would also unnecessarily delay the proceedings and likely lead to satellite litigation unrelated to the case at hand.[4]

---

[4] Observations made by the Court in seeking a palatable resolution to this issue should not be read to imply any position of the Court on the "trustworthiness" of persons acting on behalf of the defense. Had defense counsel stated that he seeks access to the apparently available classified information, the Court would proceed to the next CIPA step, the Section 5 determination. However, the fundamental unfairness of subjecting a member of the bar to such an inquiry in the face of his position that he does not *want* access to the classified material for which his "trustworthiness" is being assessed is not lost upon the Court.

Rather than order defense counsel to seek security clearances, conduct an invasive trustworthiness inquiry, or remove defense counsel from the case, the Court hereby APPOINTS Elizabeth Barger Ford, Federal Community Defender, to act as cleared counsel for Mr. Oakley after obtaining the necessary security clearance from the Court Security Officer and signing a non-disclosure agreement provided by the Court Security Officer.[5] As a practical matter, the Court has telephonically confirmed that Attorney Ford is willing to accept such appointment and will seek security clearance for this purpose. Attorney Ford, and those persons within her office whom she may designate to assist her, shall function as cleared counsel for the purpose of compliance with the statutory scheme set forth in CIPA. Certainly, the requirements of CIPA have imposed a burden on every participant in this case; however, Attorney Ford's assistance to Mr. Oakley will be primarily the composition of a summary, as described below.

Alternatively, should Mr. Oakley desired to retain different, security-cleared counsel within 30 days from the date of entry of this Order, counsel should immediately notify chambers or file a notice of appearance in this case. That notice should not be filed under seal.

---

[5] The Court Security Officer, Jennifer Campbell, has been appointed by this Court and is therefore bound to the same ethical standards as other members of the court staff, in addition to those impose by her station with the Department of Justice. The Court finds helpful the Magistrate Judge's description of the role and function of the Court Security Officer in United States v. Musa, 833 F. Supp. 752 (E.D. Mo. 1993):

> By virtue of her appointment she is bound to assist this Court as it directs and to maintain the confidences entrusted to her by the Court. To that end the Court Security Officer will be specifically directed to conduct the security clearances in such a manner that no disclosures regarding those clearances will be made to the prosecution team of attorneys or law enforcement agents involved in any way in this case, either of the identity of any persons on whom such clearances are being requested, or of any information obtained regarding such individuals.
> Musa, 833 F. Supp. at 4.

## 4. IMPLEMENTATION

First, after clearance has been obtained, Attorney Ford shall conduct an independent review of the classified information, pursuant to the Court's prospective finalized Protective Order. This review shall be conducted out of the presence of counsel for the government or their representatives. The classified information will be provided to Attorney Ford by the Court Security Officer, who holds responsibility for the classified material in this case. Attorney Ford will be afforded such time as she may need to become familiar with the facts and circumstances of the case as a whole and to review and consider the classified information in that context, making such further requests and inquiries of the government for disclosure as she may find appropriate. If the parties reach a disagreement regarding additional disclosures which they are unable to resolve, they should jointly contact the chambers of this Court to schedule a CIPA Section 2 Pretrial Conference, which will be conducted under seal in the presence of a court reporter and made part of the record in this case.

Second, after Attorney Ford has completed her review, she shall prepare a summary that will provide Attorney Moncier and Attorney Wigler with "substantially the same ability to make [Mr. Oakley's] defense as would disclosure of specific classified information." Cf. United States v. Dumeisi, 424 F. 3d 566 (7th Cir. 2005), cert. denied, 547 U. S. 1023 (2006) (district court found it unnecessary to conduct CIPA Section 2 Pretrial Conference after defense counsel had already received the described summary and no further disclosure of classified information was warranted). In order to achieve the most effective and helpful summary, Attorney Moncier and Attorney Wigler are encouraged to consult with Attorney Ford as to any anticipated defense theory or strategy, but will in no way be required to do so. A failure to make Attorney Ford aware of such matters will constitute a waiver of any objection to the summary on the grounds that it was not prepared with

9

those defenses in consideration.

Third, before disclosure, the summary should be submitted to AUSA Dake for review for the sole purpose of confirming the government's position that the summary contains no inadvertent disclosure of classified information, as provided by the letter and spirit of CIPA Sections 5 and 6. The Court does not wish to conduct an *in camera* review of the materials and their summary, but will do so if the need to resolve a disagreement arises.

Fourth, after agreement as to the non-classified nature of the summary, Attorney Ford and AUSA Dake shall jointly file a notice that the summary is complete. The notice should not be filed under seal. Attorney Ford and AUSA Dake shall then file the summary itself under seal with this Court, along with the underlying classified information it is designed to represent. On the same day it is filed with the Court, Attorney Ford shall furnish the summary to Attorney Moncier, who may thereafter utilize and disseminate it as he sees fit, as it will contain no classified information.[6]

## 5. CONCLUSION

It is hereby Ordered that Federal Community Defender Elizabeth Barger Ford is appointed to act as cleared counsel for Roy Lynn Oakley for the remainder of this case. In the event this case cannot proceed to trial without the disclosure of classified information, trial counsel shall execute the same non-disclosure agreement as the jury, if one is presented to the jury, and will be bound by

---

[6] The summary should also serve to assist counsel in avoiding the inadvertent disclosure of classified information at future proceedings. For example, if the summary refers to a "hammer" where counsel is aware from other sources (e.g., his client, the case agents in the case, an expert witness, the internet, the library) that the item is actually a gavel, he will be on notice that reference to the item as a gavel would be improper and possibly subject Mr. Oakley to further inquiry from the government as to his role in counsel's knowledge. Given the record before the Court, counsel is not prohibited from use of information obtained from the public domain in the defense of Mr. Oakley.

10

any other restrictions imposed upon the jury.

This Order is in supplement to the Agreed Protective Order entered on August 20, 2007, as [Doc. 20], and is not filed under seal as it contains no classified information. The remaining issue raised by the United States in its Motion for Supplemental Protective Order [Doc. 21] will be addressed separately.

The government's Motion for Supplemental Protective Order [Doc. 21] is:

>1. **GRANTED** in part, to the extent it requests the imposition of a CIPA security assessment for a person acting on behalf of Mr. Oakley;
>
>2. **DENIED** in part, to the extent that request is directed at Attorney Moncier and Attorney Wigler;
>
>3. **RESERVED** in part, as to the remaining issue raised by the government at pages 16 - 17, to be addressed by separate Order filed under seal.

**IT IS SO ORDERED.**

ENTER:

　　s/ H. Bruce Guyton　　
United States Magistrate Judge