IN THE UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | No. 3:07-CR-88 |
| v. | ) | (VARLAN/GUYTON) |
| | ) | |
| ROY LYNN OAKLEY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the district court as may be appropriate. This matter is before the Court on the government's Second Motion for Supplemental Protective Order [Doc. 49] and Motion for Revised Proposed Supplemental Protective Order [Doc. 50], the defendant's Motion to Consult with Previous Counsel [Doc. 65], and the four Motions to Intervene filed by defendant's former counsel, Herbert S. Moncier. [Docs. 66, 67, 73, 74] On September 17, 2008, the parties appeared before the Court for a hearing on the government's motions [Docs. 49, 50] and the defendant's motion. [Doc. 65] Assistant United States Attorneys A. William Mackie and Anthony Garcia appeared on behalf of the government. Attorneys Elizabeth Barger Ford and Kim A. Tollison appeared on behalf of the defendant, who was also present. At the September 17th hearing, the Court set a response time for the parties to respond to attorney Moncier's then pending motions. [Docs. 66, 67] Attorney Moncier subsequently filed two additional motions. [Docs. 73, 74] The Court notes that attorney Moncier's motions are, in effect, reactions to the motions of the government and the defendant. In light of the resolution of those

motions below, the Court finds that a hearing on the motions to intervene is not needed and would not be helpful in this case.

I.      **Government's Motions for Protective Orders [Docs. 49, 50]**

The government moves the Court for the entry of supplemental protective orders pursuant to Section 3 of the Classified Information Procedures Act ("CIPA"). Specifically, the government moves the Court to enter a protective order governing the dissemination of classified information and materials in connection with the litigation of this case. The government further moves the Court to require attorney Moncier to hand over certain documents which the government alleges contain classified information that attorney Moncier and the other employees and members of his law firm are not cleared to possess, and further asks the Court to require the same individuals to sign a non-disclosure agreement precluding them from discussing or other wise disclosing such information in the future. Attorney Moncier opposes the motion. [Doc. 66]

Section 3 of CIPA states that:

> Upon motion of the United States, the court shall issue an order to protect against the disclosure of any classified information disclosed by the United States to any defendant in any criminal case in a district court of the United States.

18 U.S.C. App. § 3. The Court finds initially that, from the evidence before the Court, the information that the government seeks to recover from the possession of attorney Moncier was not disclosed to attorney Moncier by the government in the course of discovery in this case, but rather involves information and knowledge already in the defendant's possession prior to the instant litigation. In light of this finding, the Court finds instructive the Second Circuit Court of Appeals' decision in the case of United States v. Pappas, 94 F.3d 795 (2d Cir. 1996).

In Pappas, the Second Circuit was faced with a factually similar circumstance: a request by

2

the government for a protective order seeking to restrict the defendant from discussing or disclosing information the defendant had obtained prior to the initiation of criminal proceedings against the defendant. The Pappas court, taking guidance from the legislative history of CIPA, found that it was not the intent of Congress that CIPA be used to regulate the dissemination of information obtained prior to federal litigation, but rather that CIPA was meant only to regulate information disclosed by the government to the defendant during litigation. Pappas, 94 F.3d at 800-01. Specifically, the Pappas court found that:

> Thus, the scope of CIPA prohibitions on a defendant's disclosure of classified information may be summarized as follows: information conveyed by the Government to the defendant in the course of pretrial discovery or the presentation of the Government's case may be prohibited from disclosure, including public disclosure outside the courtroom, but information acquired by the defendant prior to the criminal prosecution may be prohibited from disclosure only "in connection with the trial" and not outside the trial. Since [the defendant] acquired the information at issue before the trial, CIPA does not authorize the [d]istrict [c]ourt's order to the extent that the order prohibits public disclosure outside the court proceedings. Whatever protection the Government is entitled to obtain against such disclosure must be found in sources of law other than CIPA.

Id. at 801.

The Court takes further guidance from the case of United States v. Chalmers, No. S5 05 Cr. 59 (DC), 2007 U.S. Dist. LEXIS 13640 (S.D.N.Y. Feb. 27, 2007). The Chalmers court, also faced with a request by the government to regulate the disclosure of allegedly classified information by a defendant, applied Pappas and held that:

> Pappas makes clear that § 3 of CIPA does not apply to public disclosure of classified information that [the defendant] may have obtained independently of this case. This ruling does not, however, release [the defendant] from any contractual or other legal obligations

3

> imposed when he first acquired such information. If any such obligations exist, [the defendant] is bound by them; this ruling does not release him from any such obligations or any other obligations imposed by law.
>
> To the extent that [the defendant] seeks to introduce at trial any classified information he obtained outside this case, in accordance with Pappas and the intent of Congress . . . [the defendant] must comply with CIPA, and this [c]ourt can, and will, regulate "what may be introduced in the trial context." The [c]ourt cannot, however, regulate [the defendant's] handling of this information outside the context of this case.

Chalmers, 2007 U.S. Dist. LEXIS 13640 at *5 (internal citation omitted). The Court finds these two cases to be well reasoned and adopts them herein.

Given that the information in the possession of attorney Moncier which the government seeks to regulate stems from knowledge the defendant possessed prior to the instant litigation, the Court finds that Section 3 of CIPA cannot serve as a basis for the government's request. In so ruling, as the Chalmers court noted, the Court in no way finds that the defendant, and defense counsel, are free to disclose to the public the information at issue, but rather, the Court merely finds that CIPA cannot serve as a basis to preclude such disclosure. If the defendant is under any other legal or contractual obligations to ensure the confidentiality of the information at issue, those obligations still bind him. However, the government does not rely on, nor has it presented evidence as to, the existence of such other obligations, thus the Court's ruling does not consider, or alter, such other obligations, should they exist.

Accordingly, the government's motions [Docs. 49, 50] are hereby **DENIED in part**, to the extent that they seek to regulate information in the possession of the defendant prior to the initiation of this litigation, and **GRANTED in part**, to the extent that the government otherwise seeks the entry of an order regulating the dissemination of information disclosed by the government to the

4

defendant throughout the course of this litigation. The Court notes that the government has submitted proposed orders in connection with its motions, but the proposed orders include sections addressing the pre-litigation information in the possession of defendant and attorney Moncier. In light of the Court's denial of that portion of the government's motions, the government is **DIRECTED**, within ten days of the entry of this Order, to submit a revised proposed order governing the disclosure of information in this case that does not include the sections related to the pre-litigation information in the possession of the defendant or attorney Moncier.

## II. Defendant's Motion to Consult with Previous Counsel

Before addressing this motion, the Court first sets forth the relevant procedural history of this case. On April 29, 2008, attorney Moncier was suspended from the practice of law in the District Court for the Eastern District of Tennessee. See In Re: Herbert Moncier, 1:08-MC-09 (E.D. Tenn. April 29, 2008). Prior to his suspension, attorney Moncier, and another attorney from the Moncier law firm, David Wigler, represented the defendant in this case. On August 18, 2008, attorney Wigler appeared before the Court and made an oral motion to withdraw from his representation of the defendant, citing an inability to establish the level of separation from attorney Moncier necessary to allow attorney Wigler to continue in his representation of the defendant. By Order dated August 20, 2008, the Court granted attorney Wigler's oral motion to withdraw. [Doc. 62] In that same Order, in light of attorney Moncier's suspension from the bar of this District, the Court formally terminated attorney Moncier's representation of the defendant. [Id.] The defendant was given until September 8, 2008, to retain new counsel or to otherwise advise the Court if he wished to have counsel appointed to represent him. [Id.]

On September 8, 2008, the defendant appeared before the Court for a status conference. At

5

that hearing, the following colloquy occurred:

> The Court: This matter is before the Court today for a scheduled status conference for the Court to give Mr. Oakley a chance to see if he can retain counsel in this matter. Mr. Oakley?
>
> Mr. Oakley: Well, I tried to find somebody, but I didn't have a whole lot of luck at it. I guess I just want you to appoint me somebody.
>
> The Court: All right. Very well. The Court is going to appoint the Federal Defender Service. They are already involved in this case on a limited basis for you. They have been cleared as counsel by the folks who have to approve of someone to receive information so they have - - Ms. Ford and I believe Mr. Tollison both are cleared. That means that they have survived a very thorough background check and screening and they will be able to have access to all of the documents in this case that might be used by the government to prosecute you and they will be able to review those documents and to advise you and to counsel you going forward in this matter without any restrictions. Is that a fair statement, Ms. Ford?
>
> Ms. Ford: Yes, Your Honor.
>
> The Court: Of course, they are well-qualified and very experienced counsel to represent you. Ms. Ford is actually the chief Federal Defender for the whole Eastern District and Mr. Tollison is a veteran of that office and has handled many, many matters in this court. What I am trying to assure you, Mr. Oakley, is I am not just appointing them because they are sitting here. The Court believes that they probably - - the Court is convinced that they are better positioned to represent you than any lawyers this Court could think of to appoint to represent you.
>
> The Court: I will appoint, we'll enter the appropriate order appointing them as your counsel at this time.

Mr. Oakley did not object to the appointment of the Federal Defender Services. Additionally, prior to the appointment of the Federal Defender Services, Mr. Oakley had completed a financial affidavit. The Court took that financial affidavit into account when determining whether to appoint counsel in this case, and the Court found that Mr. Oakley does qualify for the appointment of the Federal

Defender Services. [Doc. 64] Thus, until this Court, or a higher court, says otherwise, attorneys Tollison and Ford are counsel of record for Mr. Oakely. Conversely, in light of attorney Moncier's suspension from the bar of this District, attorney Moncier is legally incapable of representing Mr. Oakley in this matter.

In his motion, the defendant moves the Court to enter an Order directing attorney Moncier to consult with the defendant's current counsel and to provide current counsel with a copy of the defendant's file. As grounds, the defendant states that current counsel has attempted to speak with attorney Moncier, but that attorney Moncier was unwilling to discuss the matter with them out of a fear of violating the suspension Order entered by the Honorable Judge Curtis L. Collier. See In Re: Herbert Moncier, 1:08-MC-09 (E.D. Tenn. April 29, 2008). Attorney Moncier opposes the motion. [Doc. 67]

The courts in this District operate under the Tennessee Rules of Professional Conduct. E.D.TN. LR 83.6. Rule 1.16 of the Tennessee Rules of Professional Conduct states, in pertinent part, that:

> Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of the client if:
>
> (1) the representation will result in a violation of the Rules of Professional Conduct or other law; or
>
> (2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client; or
>
> (3) the lawyer is discharged.

Tenn. Sup. Ct. R. 8, RPC 1.16(a). The Rules further state that "[a] lawyer shall not practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction."

7

Case 3:07-cr-00088-TAV-HBG   Document 77   Filed 10/08/08   Page 7 of 13   PageID #: 263

Tenn. Sup. Ct. R. 8, RPC 5.5(a). In light of attorney Moncier's suspension from the bar of this District, attorney Moncier is incapable of representing Mr. Oakley without violating both Rule 5.5 and the lawful Order of Judge Collier suspending attorney Moncier from the practice of law before the courts of this District. Thus, under Rule 1.16(a)(1), attorney Moncier had a duty to withdraw from his representation of Mr. Oakley in this matter, though the same legal effect was accomplished by Order [Doc. 62] of this Court which formally terminated attorney Moncier's representation of Mr. Oakley.

In cases such as this, where an attorney is required, for whatever reason, to cease his representation of a client, the Rules further state that:

> Upon termination of the representation of a client, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, including:
>
> (1) giving reasonable notice to the client so as to allow time for the employment of other counsel;
>
> (2) promptly surrendering papers and property of the client and any work product prepared by the lawyer for the client and for which the lawyer has been compensated;
>
> (3) promptly surrendering any other work product prepared by the lawyer for the client, provided, however, that the lawyer may retain such work product to the extent permitted by other law but only if the retention of the work product will not have a materially adverse affect on the client with respect to the subject matter of the representation;
>
> (4) promptly refunding to the client any advance payment for expenses that have not been incurred by the lawyer; and
>
> (5) promptly refunding any advance payment for fees that have not been earned.

Tenn. Sup. Ct. R. 8, RPC 1.16(d). Thus, under the rules, attorney Moncier has an ethical duty to

8

turn over any case related materials to Mr. Oakley, or, in this case, Mr. Oakley's new attorneys.

In interpreting this Rule, the Tennessee Supreme Court, citing with approval ethics opinions of the American Bar Association, has held that:

> "the conscientious lawyer should not withhold from the client any item that could reasonably be anticipated would be useful to the client." Opinion 10651 says that investigative reports prepared at the attorney's direction in preparation of a matter are part of the attorney's file and, although specific cases may vary, on the whole such investigative reports should be turned over to a client on withdrawal. Additionally, the disciplinary rule itself offers a guideline in requiring that the lawyer must take "reasonable steps to avoid foreseeable prejudice to the rights of his client." This may require affirmative action after discharge.

Crawford v. Logan, 656 S.W.2d 360, 363 (Tenn. 1983) (internal citation omitted). The Court finds that, in this instance, the document at issue in the government's motions, discussed above, falls within the same general category as an investigative report and is the type of material that, in light of attorney Moncier's termination, should be handed over to Mr. Oakley's current counsel. In addition, given that the government is contesting the legality of Mr. Oakley's possession of those documents, the Court finds that the most prudent course of action is for attorney Moncier to provide a copy of Mr. Oakley's file, including the disputed document, to the Federal Defender Services. Such action will ensure that Mr. Oakley's new counsel have access to all the materials necessary to adequately represent Mr. Oakley in this matter, while at the same time avoiding any potential legal complications that might be created if attorney Moncier were to deliver the contested documents to Mr. Oakley directly.

In so ruling, the Court is aware of attorney Moncier's arguments that the material in question is protected by the attorney-client privilege and that attorney Moncier is thus precluded from delivering this information to attorneys Ford and Tollison. However, despite attorney Moncier's

9

argument to the contrary, attorneys Ford and Tollison are now Mr. Oakley's counsel of record, and, as Mr. Oakley's attorneys, the attorney-client privilege does not bar them from gaining access to the materials in question. As the Court noted above, Mr. Oakley has a right to access the file maintained by attorney Moncier in this matter. Similarly, attorney Moncier has a duty to provide Mr. Oakley with the contents of that file. Given the legal complications created by the government's allegations, Attorneys Ford and Tollison, acting as Mr. Oakley's lawyers, are ideally situated to accomplish that transfer, and it is in Mr. Oakley's best interests that they be given access to his file in this matter.

However, while the Court does find that attorney Moncier should and, under his ethical obligation as an attorney licensed to practice in Tennessee, must provide attorneys Ford and Tollison with access to Mr. Oakley's file, the Court will not compel attorney Moncier to consult with current counsel. The Court does not find that a discussion between attorney Moncier and current counsel as to attorney Moncier's past efforts would violate the restrictions placed on attorney Moncier by Judge Collier, but the Court will not order attorney Moncier to do so. While the Court believes that Mr. Oakley's best interests would be served by attorney Moncier's communication with current counsel, and while the Court finds that, in general, the rules of professional conduct would suggest such communication to be appropriate and necessary, under the unique circumstances in this case, the Court will not compel such communication.

Accordingly, the defendant's motion [Doc. 65] is **DENIED in part**, to the extent that the Court will not order attorney Moncier to consult with current counsel. Similarly, the defendant's oral motion to transfer this issue to Judge Collier for his determination is hereby **DENIED**. The defendant's motion [Doc. 65] is **GRANTED in part**, to the extent that attorney Moncier is **DIRECTED** to provide attorneys Ford and Tollison with access to the defendant's file in this

10

matter. Attorney Moncier may provide counsel with either the original file, a copy of the same, or he may allow counsel to make a copy of the file at their own expense. Should attorney Moncier be uncomfortable in dealing directly with current counsel, he may seek the assistance of his own attorney to facilitate the transfer of the file, assuming of course that the facilitating attorney does not examine the privileged contents of the file, but instead merely serves as an intermediary. Whatever method attorney Moncier chooses to accomplish this task, he has until and including **October 17, 2008**, to comply with this Order. Failure to comply with this Order could result in the imposition of appropriate sanctions and penalties, up to and including finding attorney Moncier in contempt of a lawful Order of this Court. In light of the unique posture of this case, the Court does not find that attorney Moncier's prior refusal to deliver the file to current counsel was in derogation of attorney Moncier's ethical obligations, but the Court will consider any further obstruction of this matter to be in violation of Rule 1.16 of Tennessee's Rules of Professional Conduct and will treat the matter accordingly.

### III.     Attorney Moncier's Motions to Intervene

Given the Court's rulings as to the government's motions, attorney Moncier's motions to intervene [Docs. 66, 73] on those issues are hereby **DENIED as moot**. Similarly, given the Court's denial of the defendant's request to transfer this issue to Judge Collier, attorney Moncier's motion to intervene [Doc. 74] on that issue is also **DENIED as moot**.

Attorney Moncier's motion to intervene [Doc. 67] as to the request of the Federal Defender Services is hereby **DENIED**. The Court will not compel attorney Moncier to communicate with Mr. Oakley's current counsel, but attorney Moncier does have an ongoing ethical obligation to provide Mr. Oakley's current counsel with access to the file attorney Moncier maintained in this matter.

11

Attorney Moncier's inability to practice law in the Eastern District of Tennessee does not remove that obligation, and the Court does not find that providing Mr. Oakley's current counsel with access to the file would in any way violate the Orders entered by Judge Collier. To the extent that attorney Moncier still fears acting in violation of the Orders of Judge Collier, attorney Moncier may act through an intermediary attorney, as described above, to insulate attorney Moncier from any perceived impermissible contact with Mr. Oakley's current counsel.

To the extent that attorney Moncier challenges the Court's authority to require him to provide Mr. Oakley's current counsel with a copy of Mr. Oakley's file, the Court notes that the power of a court to regulate the conduct of attorneys appearing before it derives from the professional relationship between the court and attorneys appearing before it. See Theard v. United States, 354 U.S. 278, 281 (1957) ("The court's control over a lawyer's professional life derives from his relation to the responsibilities of a court."); Goldfarb v. Virginia State Bar, 421 U.S. 773, 792 (1975) ("The interests of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been 'officers of the courts.'"). Prior to his suspension, attorney Moncier appeared in this matter as an officer of the court, and, when one attorney is replaced by another attorney, the Court relies on the departing attorney, as an officer of the court, to assist in smoothing the period of transition between attorneys. Given attorney Moncier's past choice to practice in this Court, the Court finds that he cannot now ignore his previously accepted responsibilities. To rule otherwise would allow recalcitrant attorneys to hold the legal interests of their former clients, and the entire judicial process, hostage, and such an alternative simply is not permissible. The Court does not believe, nor does it find, that such was the intent of attorney Moncier, but the Court will not set a precedent that might

aid such obstruction in the future by disgruntled attorneys.

**IV.    Summary**

In summary, for the reasons set forth more fully above, the government's motions [Docs. 49, 50] are **GRANTED in part** and **DENIED in part**, to the extent set forth above.  The defendant's motion [Doc. 65] is **GRANTED in part** and **DENIED in part**, to the extent set forth above.   The defendant's oral motion to transfer the defendant's motion to Judge Collier for his consideration is **DENIED**.  Attorney Moncier's motions to intervene [Docs. 66, 73, 74] as to the government's motions and as to the defendant's oral motion are **DENIED as moot**.  Attorney Moncier's motion to intervene [Doc. 67] as to the Federal Defender Services is **DENIED**.  The government shall have ten days from the entry of this Order to submit a revised protective order governing the dissemination of classified information in this matter.  Attorney Moncier shall have until and including **October 17, 2008**, to provide attorneys Ford and Tollison with access to Mr. Oakley's file, as set forth more fully above.

**IT IS SO ORDERED.**

ENTER:

         s/ H. Bruce Guyton
United States Magistrate Judge